# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,
        Appellant,

    v.                                                      Case No. 12-C-0659

DANIEL W. BRUCKNER,
        Appellee.

## DECISION AND ORDER

      The Federal National Mortgage Association ("Fannie Mae" or "Fannie") appeals from an order of the bankruptcy court denying its motion for relief from the automatic stay, its motion to have certain property excluded from the debtor's bankruptcy estate, and its motion to dismiss the debtor's Chapter 11 case. See Bankr. Ct. Order of May 29, 2012.[1] The denial of relief from the automatic stay is a ruling that is appealable as of right. See In re James Wilson Assocs., 965 F.2d 160, 166 (7th Cir. 1992). However, the denial of the motion to exclude property from the estate and the refusal to dismiss the debtor's Chapter 11 case were interlocutory rulings, and so Fannie cannot proceed with its appeal from those rulings unless I grant it permission to do so. See 28 U.S.C. § 158(a)(2). In an earlier order, I instructed the parties to brief all issues and reserved ruling on whether to accept Fannie's appeal of the interlocutory rulings. Because the interlocutory rulings are closely related to the rulings that are immediately appealable, I find that it is in the interest of

---

[1] The May 29, 2012 order was the court's written order, which was entered on May 30, 2012. The written order was based on the court's oral ruling, which can be found at pages 172–85 of the transcript for the hearing held on May 15, 2012.

justice to grant Fannie's motion for leave to appeal the interlocutory rulings and will consider all issues below.

## I. BACKGROUND

As of the petition date, the debtor, Daniel W. Bruckner, owned 36 separate parcels of rental property. They contained approximately 1,300 residential and commercial rental units. Fannie Mae is the holder of notes and security interests relating to three of those parcels: (1) the "Estabrook Property," (2) the "Good Tree Property," and (3) the "Silver Spring Property." I will refer to those properties together as the "Fannie properties."

In July 2010, one of Bruckner's largest rental properties—not one of the Fannie properties, see Hearing Tr. April 30, 2012, at 194–95—was flooded by heavy rains. The foundations of all five buildings at this location shifted due to the flooding, and city inspectors ordered all tenants to evacuate the property. This resulted in $40,000 per month in lost revenue, and it cost over $400,000 to repair the flood damage. Bruckner did not have flood insurance.

The loss of income and costs of repairs from the flood caused Bruckner to fall behind on his water bills for some of his properties. The unpaid water bills were then added to the tax rolls, and the lenders responded by increasing the tax escrow required for each property. This, in turn, caused Bruckner to fall behind on his mortgage payments. Eventually, some of Bruckner's lenders began foreclosure proceedings on their properties. Fannie was one of those lenders—it began foreclosure proceedings on all of its properties.

By December 2011, Bruckner decided that he needed to seek protection under the Bankruptcy Code. However, although Bruckner had always operated all of his properties

2

together as a single business, the properties were technically owned by various Wisconsin limited liability companies ("LLCs") of which he was the sole member. It was the LLCs, not Bruckner, that issued the notes to the lenders and that held title to the properties. On December 30, 2011, Bruckner caused the various LLCs to transfer all 36 properties to him personally by way of quitclaim deeds. At the same time, Bruckner entered into agreements with each LLC by which he personally assumed the outstanding mortgage debts, trade debts, and other liabilities of each LLC. A few days later, on January 3, 2012, Bruckner commenced the present bankruptcy case under Chapter 11.

Soon after Bruckner filed for bankruptcy, Fannie filed the motion that is the subject of this appeal. Fannie's primary argument was that the transfer of the properties from the LLCs to Bruckner on the eve of bankruptcy was improper. According to Fannie, the transfer constituted fraud and bad faith and was a scheme to hinder or delay creditors. Fannie asked the bankruptcy court to either exclude the Fannie properties from Bruckner's bankruptcy estate, dismiss Bruckner's bankruptcy case in its entirety, or grant Fannie relief from the automatic stay. Fannie also argued that, whether or not the transfer of the properties was improper, it was entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(2) on the grounds that there was no equity in the Fannie properties and the properties were not necessary to an effective reorganization.

The bankruptcy court held a two-day hearing on Fannie's motion. At the conclusion of the hearing, the bankruptcy court found that Bruckner did not engage in fraud or bad faith or a scheme to hinder or delay creditors. The court found that Bruckner transferred the properties in good faith in order to reduce costs and simplify the bankruptcy. The court

3

also found that there was equity in the properties and that the properties were necessary to an effective reorganization. This appeal ensued.

## II. DISCUSSION

There are two broad questions raised in this appeal. The first is whether the transfer of the properties from the separate LLCs to Bruckner on the eve of bankruptcy was improper and entitles Fannie to some form of relief—either relief from the automatic stay, dismissal of Bruckner's bankruptcy case, or a ruling that the Fannie properties are not property of Bruckner's estate. The second broad question is whether, even if the transfer was proper, Fannie is entitled to relief from the automatic stay because there is no equity in the Fannie properties and such properties are not necessary to an effective reorganization.

**A.     Issues Relating to Transfer of Properties to Bruckner**

Fannie raises a number of different legal theories in an attempt to show that the transfer was improper. First, Fannie argues that Bruckner obtained the Fannie properties by fraud, and that therefore the properties should not be deemed property of his estate. Second, Fannie argues that if the properties are deemed property of Bruckner's estate, then it should be granted relief from the automatic stay because Bruckner caused the LLCs to transfer the properties to him as part of a scheme to delay, hinder or defraud creditors.[2] See 11 U.S.C. § 362(d)(4). Third, Fannie argues that the transfer constitutes cause for

---

[2]Fannie also argues that Bruckner acted in bad faith when he caused the properties to be transferred to him, and that therefore Fannie is entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(1). However, this argument is no different from Fannie's argument that the transfer was part of a scheme to delay, hinder or defraud creditors, and so I will not discuss it separately.

4

dismissing Bruckner's Chapter 11 petition under 11 U.S.C. § 1112(b).  I discuss these arguments below.

### 1. Whether Fannie properties are property of Bruckner's estate

Fannie's first argument is that its properties should not be treated as property of Bruckner's bankruptcy estate under 11 U.S.C. § 541(a) because Bruckner obtained the properties by means of fraud.  The rule on which Fannie relies—that property obtained by means of fraud does not constitute property of the estate—does not appear in the Bankruptcy Code but can be found in judicial opinions.  See, e.g., In re N. Am. Coin & Currency Ltd., 767 F.2d 1573, 1576 (9th Cir. 1985); In re Teltronics, Ltd., 649 F.2d 1236, (7th Cir. 1981); In re Paragon Sec. Co., 589 F.2d 1240, 1242 (3rd Cir. 1978); Nicklaus v. Bank of Russellville, 336 F.2d 144, 147 (8th Cir. 1964).  The rule is usually stated as follows: bankruptcy trustees have no interest in property acquired by fraud of bankrupts, as against the rightful owners of the property.  See Coin & Currency, 767 F.2d at 1576; Paragon, 589 F.2d at 1242; Nicklaus, 336 F.2d at 147.  The principle underlying this rule is that the bankrupt's creditors should not benefit from the bankrupt's fraud at the expense of those who have been defrauded.  See Coin & Currency, 767 F.2d at 1576; Paragon, 589 F.2d at 1242; Nicklaus, 336 F.2d at 146.

In the present case, Fannie argues that each transfer of a property from one of the separate LLCs to Bruckner constituted a fraudulent transfer under state law and therefore constituted a fraud on the LLCs' creditors, including Fannie.  Initially, I note that it is questionable whether the rule against treating property obtained by fraud as property of the estate applies to a claim by a creditor that the debtor received the property through a

5

fraudulent transfer. The rule appears to have arisen to protect third parties whose property the debtor obtained by illicit means, not to protect a creditor of a third party who wishes to avoid a transfer made by that party. Moreover, the rule seems designed to deal with <u>actual</u> fraud,³ and transfers can be deemed "fraudulent" for purposes of debtor-creditor law even though they do not involve any actual fraud. See <u>McClellan v. Cantrell</u>, 217 F.3d 890, 894 (7th Cir. 2000); <u>see also</u> 5 Collier on Bankruptcy ¶ 548.01 (16th ed. 2012) (noting that, despite use of term "fraudulent," fraudulent conveyance statutes reach transactions that are not frauds); 1 Norton Bankruptcy Law and Practice 3d, § 3:11 n.13 (2012) (same). However, I do not need to determine whether the rule excluding property obtained by fraud from the debtor's estate applies when a creditor seeks to avoid a fraudulent transfer because, as explained below, Fannie has not shown that the transfers at issue constituted fraudulent transfers under Wisconsin law.

The statute on which Fannie relies is Wis. Stat. § 242.04, which provides in relevant part as follows:

> (1) A transfer made or obligations incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay or defraud any creditor of the debtor; or
>
> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

---

³ See <u>Coin & Currency</u>, 767 F.2d at 1576 (actual fraud); <u>Teltronics</u>, 649 F.2d at 1239 (mail fraud); <u>Paragon</u>, 589 F.2d at 1242–43 (common-law fraud); <u>Nicklaus</u>, 336 F.2d at 145 (criminal fraud).

6

> 1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
> 2. Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

In the present case, the "debtor[s]" are the three separate LLCs that held title to the Fannie properties prior to the transfer, see Fannie Op. Br. at 14 n.5, and the "creditor" is Fannie. Fannie argues that the LLCs transferred their properties to Bruckner "without receiving reasonably equivalent value in exchange."[4] However, Fannie does not dispute that, as part of each transfer, Bruckner entered into an agreement with the LLC in which he assumed all of its liabilities, including the LLC's liabilities to Fannie, water and municipal charges, obligations pursuant to unexpired leases, and insurance costs. Fannie has made no attempt to show that these assumed liabilities did not constitute reasonably equivalent value for the exchange. To be sure, Fannie contends that Bruckner's assumption of the LLCs' liabilities to Fannie was not reasonably equivalent value because there was some equity in the properties at the time of the transfer. However, as noted, Bruckner assumed other debts besides those owed to Fannie, and Fannie has not attempted to show that the sum total of all assumed liabilities was less than the value of the properties. Thus, I cannot say that the bankruptcy court erred in failing to find that the LLCs did not receive reasonably equivalent value in exchange.

---

[4] Fannie does not argue that the LLCs had "actual intent to hinder, delay or defraud any creditor." However, it does argue that Bruckner engaged in a scheme to delay, hinder or defraud creditors, and I will discuss that argument below in the context of Fannie's request for relief from the automatic stay.

In any event, the lack of reasonably equivalent value is not sufficient to render a transfer fraudulent under Wis. Stat. § 242.04(b). Fannie must also show that "the debtor" in each transaction (which remember was the LLC, not Bruckner) either (1) "was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction," or (2) "intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due." Fannie has not shown that either of these additional elements was met. Nor could it, since the LLCs transferred their entire businesses to Bruckner—including all assets and liabilities—and therefore did not intend to engage in any further business or incur any further debts.[5]

Accordingly, the bankruptcy court's refusal to exclude the Fannie properties from Bruckner's bankruptcy estate will be affirmed.

**2.      Scheme to delay, hinder or defraud creditors**

Fannie next argues that it should have been granted relief from the automatic stay under § 362(d)(4), which requires relief from the automatic stay

---

[5]Fannie contends that the transfers caused Bruckner to incur more debt than he was able to pay, but since the LLCs, not Bruckner, are the "debtors" within the meaning of Wis. Stat. § 242.04, this fact is irrelevant. Fannie cannot treat the LLCs (the transferors) as the debtors for purposes of measuring reasonably equivalent value, and then treat Bruckner (the transferee) as the debtor for purposes of measuring whether the transfer caused the debtor to incur more debt than he was able to pay. Section 242.04 mentions only one "debtor." If Bruckner is to be considered that debtor, then for the transfer to be deemed fraudulent he must have incurred the LLCs' debts without receiving reasonably equivalent value in exchange. However, Fannie contends that Bruckner received more than reasonably equivalent value for assuming the debts, inasmuch as it contends that the properties were worth more than the liabilities he assumed. Thus, even if Bruckner is considered the debtor, Fannie has not shown that the transfers were fraudulent.

8

> with respect to a stay of an act against real property . . . , by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—
>
> > (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> >
> > (B) multiple bankruptcy filings affecting such real property.

11 U.S.C. § 362(d)(4). Whether relief should have been granted under this section turns on whether the bankruptcy court abused its discretion when it found that Bruckner had not engaged in a "scheme to delay, hinder, or defraud creditors." See, e.g., In re United Air Lines, Inc., 438 F.3d 720, 734 (7th Cir. 2006) (bankruptcy court's decision regarding relief from automatic stay reviewed for abuse of discretion).

The bankruptcy court made findings of fact relating to this issue at the conclusion of a two-day hearing. The court found that, although Bruckner had handled the matter "clumsily," his intent in transferring the properties was to proceed with a plan for reorganization in good faith. See Hearing Tr., May 15, 2012, at 177. The court found that, prior to the transfer, each of the separate LLCs "could have filed separate bankruptcy petitions and would have done [so] had they not transferred [their properties to Bruckner]." Id. at 178. The court found that, without the transfer, "there would have been a series of Chapter 11 filings," id. at 178–78, which would have been "extremely costly and duplicative," id. at 176. And the court found that Bruckner's motive in completing the transfer was to make it possible to file a single Chapter 11 proceeding. Id. at 177.

All of these findings must be upheld unless they were clearly erroneous. See In re Smiley, 864 F.2d 562, 566 (7th Cir. 1989). And they were not clearly erroneous. Bruckner

9

testified that once he realized that all of his properties were in trouble and in need of bankruptcy protection, he transferred them along with the liabilities of the LLCs to himself for the purpose of streamlining the bankruptcy process and making the bankruptcy conform to the way he had always done business, which was as one single enterprise. Bruckner described the situation prior to the transfer as "a hodgepodge of ownership" and stated that

> we were filing a bankruptcy to try to make sense of all of this and rather than file twelve bankruptcy petitions we consolidated into one bankruptcy petition which has all my assets and all my debts and the plan to pay everybody and that was the way the whole place was run to begin with.

Hearing Tr., April 30 2012, at 68. The bankruptcy court was entitled to credit this testimony.[6] Moreover, Fannie has not shown that the bankruptcy court's finding that the LLCs could have filed for bankruptcy separately was clearly erroneous.[7] Thus, this is not a case in which a person or entity who is ineligible for bankruptcy transfers an asset to a

---

[6]Fannie points out that in a deposition he gave prior to testifying at the bankruptcy hearing, Bruckner stated that he was not concerned about bankruptcy filing fees when he transferred the properties to himself. However, the bankruptcy court was aware of Bruckner's deposition testimony, Hearing Tr., April 30, 2012, at 107–09, and apparently found that it did not undermine Bruckner's hearing testimony. I must defer to this credibility determination. See Freeland v. Enodis Corp., 540 F.3d 721, 734 (7th Cir. 2008) ("it is for the bankruptcy court to assess the credibility of witnesses and weigh evidence, and [a reviewing court] will not second guess the court's resolution of conflicting evidence"). Moreover, it is worth noting that it is clear from Bruckner's testimony that the purpose of the transfer was not to save filing fees but to make the bankruptcy easier to administer (and thus cheaper) and conform to the way he had always done business.

[7]Fannie suggests that the LLCs' eligibility for bankruptcy relief was "questionable," see Op. Br. at 21, but it does not develop an argument showing that the bankruptcy court's finding that the LLCs were eligible for bankruptcy was clearly erroneous. Fannie mentions that some of the LLCs might have been solvent, but that does not establish that they were ineligible for bankruptcy. Moreover, Fannie mentions that the LLCs were administratively dissolved at the time of the bankruptcy. However, the LLCs could have filed for reinstatement prior to bankruptcy, see Wis. Stat. § 183.09025, and Fannie has not pointed to any provision of bankruptcy law that would have prevented an LLC that has applied for reinstatement from filing for bankruptcy.

10

person or entity who is eligible for bankruptcy for the purpose of preventing a creditor from foreclosing on the asset. Cf. In re Wilke, 429 B.R. 916 (Bankr. N.D. Ill. 2010) (in which a third party who was ineligible for bankruptcy because of past abuse of the bankruptcy process transferred an asset to a debtor on the eve of bankruptcy for the purpose of putting the asset beyond the reach of the third party's creditors).

Fannie seems to contend that, even if it was Bruckner's intent to proceed with a reorganization in good faith, filing one global bankruptcy rather numerous separate bankruptcies (one for each troubled LLC) necessarily constitutes a scheme to hinder or delay creditors. However, although Fannie would prefer to be dealing with three separate bankruptcies involving only its properties rather than a global bankruptcy involving the properties of many creditors, I can find nothing in bankruptcy law indicating that the kind of pre-bankruptcy consolidation effected by Bruckner in this case necessarily constitutes a scheme to delay, hinder or defraud creditors. Perhaps a bankruptcy court would not abuse its discretion if it found that acts similar to Bruckner's constituted a scheme to delay, hinder or defraud creditors. But in this case the bankruptcy court concluded that Bruckner's acts did not constitute such a scheme, and I cannot say that this conclusion was based on clearly erroneous findings of fact or involved an abuse of discretion. Accordingly, the bankruptcy court's decision to deny relief from the automatic stay under § 362(d)(4) will be affirmed.

### 3. Dismissal of Chapter 11 Petition

It is generally recognized that good faith is a threshold prerequisite to securing Chapter 11 relief, and that the lack of good faith constitutes "cause" for dismissing a

11

Chapter 11 petition under 11 U.S.C. § 1112(b). In re Madison Hotel Assocs., 749 F.2d 410, 426 (7th Cir. 1984). There is no particular test for determining whether a debtor has filed a Chapter 11 petition in good faith; rather, the bankruptcy court has the discretion to evaluate the totality of the circumstances in each case to determine whether the petition was filed in good faith. See 2 Robert E. Ginsberg et al., Ginsberg & Martin on Bankruptcy § 13.03[C] (5th ed. Supp. 2012). This subjective inquiry has led courts to develop a variety of different approaches, factors and tests that focus on the debtor's subjective intentions in light of all the facts and circumstances of the case. Id. In essence, these various approaches attempt to determine whether the debtor is trying to use the provisions and protections of Chapter 11 inappropriately. Id.

One approach to good faith that has been identified in the caselaw involves what is known as the "new debtor syndrome." In this scenario, a person who is not eligible for bankruptcy and who has a substantial piece of business property that is facing foreclosure creates a new entity wholly owned by that person, transfers the property to the new entity, and then causes the new entity to immediately file a Chapter 11 petition. Id. The Chapter 11 petition stays the foreclosure, but because the person did not transfer his or her other assets to the new entity, those assets are kept out of the bankruptcy. Id. Thus, the creation of the new entity enables the person to use Chapter 11 to block or delay the foreclosure on the troubled asset while preventing creditors from reaching the person's other assets. As one court has described the new debtor syndrome, it involves a recurring pattern "characterized by the creation or revitalization of a one-asset entity on the eve of foreclosure for the sole purpose of 'isolat[ing investors from] the insolvent property and its creditors.'" Carolin Corp. v. Miller, 886 F.2d 693, 704 (4th Cir. 1989) (quoting In re Little

12

Creek Dev. Co., 779 F.2d 1068, 1073 (5th Cir. 1986)) (modification in Carolin). Courts often conclude that when the debtor's actions fit within the new debtor syndrome, the debtor has acted in bad faith. See id. However, the mere fact that the debtor employed this tactic is not per se bad faith. See Ginsberg et al., supra, § 13.03.

In the present case, Fannie argues that Bruckner's transferring the properties to himself on the eve of bankruptcy fits within the new debtor syndrome, and that therefore the bankruptcy court should have dismissed his Chapter 11 petition for lack of good faith under § 1112(b). However, the bankruptcy court explicitly found that Bruckner acted in good faith, and I may not disturb that finding unless the court abused its discretion, see In re Jartran, Inc., 886 F.2d 859, 868 (7th Cir. 1989), which it did not, as this case clearly does not fit within the new debtor syndrome. Although Bruckner transferred properties on the eve of bankruptcy, he did not transfer them to an entity for the purpose of isolating them from other, untroubled assets. Indeed, this case presents almost the exact reverse of the new debtor syndrome: Bruckner transferred troubled assets away from single-asset entities to himself personally, thereby subjecting all his assets to the jurisdiction of the bankruptcy court. Thus, the bankruptcy court correctly determined that the new debtor syndrome does not apply, and as explained in the discussion of the alleged scheme to hinder or delay creditors, above, the bankruptcy court did not abuse its discretion in determining that Bruckner's conduct did not otherwise constitute bad faith. Accordingly, the bankruptcy court's decision to deny Fannie's motion to dismiss the Chapter 11 petition under § 1112(b) will be affirmed.[8]

---

[8]Fannie also argues that Bruckner acted in bad faith because at the time he caused the LLCs to transfer their properties they were administratively dissolved, which resulted

13

**B.     Relief From Automatic Stay Under 11 U.S.C. § 362(d)(2)**

The remaining issue is whether, even if Bruckner did nothing improper when he transferred the properties to himself on the eve of bankruptcy, relief from the automatic stay is warranted under 11 U.S.C. § 362(d)(2), which states that relief shall be granted "with respect to a stay of an act against property" if "the debtor does not have an equity in such property" and "such property is not necessary to an effective reorganization." Fannie contends that its properties are all underwater and that they are not necessary to an effective reorganization.

The bankruptcy court found that Bruckner did have equity in the Fannie properties at the time of its ruling on Fannie's motion for relief from the automatic stay, see Hearing Tr., May 15, 2012, at 181–83, and this finding was not clearly erroneous. Both Fannie and Bruckner presented expert testimony as to the value of the Fannie properties, and the bankruptcy court found that the testimony of each expert was competent and that each expert's valuations were reasonable. The court determined that neither expert's opinion was entitled to more weight than the other's, and it selected values for the Fannie properties that were in between the values chosen by the experts. Although Fannie points to a number of reasons why the bankruptcy court should have given more weight to its expert's valuations, Fannie does not dispute that Bruckner's expert's valuations were competent and admissible, and I may not second-guess the bankruptcy court's decision

---

in the transfers' being in violation of state law governing the wind-up of limited liability companies. However, the bankruptcy court, in its discretion, determined that this technical violation of state law did not constitute bad faith warranting dismissal of a Chapter 11 petition under § 1112(b), see Hearing Tr., May 15, 2012, at 179, and that determination did not involve an abuse of discretion.

14

to give the testimony of each expert equal weight.  See Freeland v. Enodis Corp., 540 F.3d 721, 734 (7th Cir. 2008).  Thus, the bankruptcy court did not clearly err when it determined the value of the properties.

Fannie argues that even if the bankruptcy court's valuation of the properties was not clearly erroneous, its decision must be reversed because it failed to make a final decision on the amount of "yield maintenance" that Fannie was entitled to.  Yield maintenance is a penalty for prepaying a loan rather than making all payments as scheduled until maturity.  See River East Plaza, LLC v. Variable Annuity Life Ins. Co., 498 F.3d 718, 719 (7th Cir. 2007).  According to the bankruptcy court, if Fannie is entitled to the full amount of yield maintenance it claims it is entitled to, two of the three Fannie properties would be underwater.  Hearing Tr., May 15, 2012, at 183.  The court in its ruling determined that Fannie was likely entitled to some amount of yield maintenance, but not necessarily an amount that would put the properties underwater, and it declined to make a final determination as to the exact amount of permissible yield maintenance as part of its ruling on Fannie's motion.  Still, the court found that Bruckner had an "equity cushion" in all three properties, id., and so the court implicitly found that the amount of yield maintenance allowed would not result in Bruckner's having no equity in the properties.

Fannie cites no authority for the proposition that the bankruptcy court's failure to make a final decision on yield maintenance at the time it ruled on the motion for relief from the automatic stay was error, see Op. Br. at 28, and I am aware of none.  Moreover, Fannie does not show that the bankruptcy court's implicit finding that the amount of yield maintenance that would eventually be allowed would not result in Bruckner's having no equity in the properties was clearly erroneous.  Indeed, Fannie does not develop an

15

argument showing that it is entitled to the full amount of yield maintenance, and so I am in no position to say that the bankruptcy court made a finding that was clearly erroneous. Accordingly, the bankruptcy court's denial of relief from the automatic stay under § 362(d)(2) will be affirmed.[9]

### III.  CONCLUSION

For the reasons stated, Fannie's motion for leave to appeal is **GRANTED**, and the order of the bankruptcy court is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 19th day of December, 2012.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

[9] Because Fannie has not shown that the bankruptcy court's determination that Bruckner had some equity in the properties was clearly erroneous, I need not address whether the court erred in determining that the properties were necessary to an effective reorganization.

16